PHILLIP A. TALBERT
United States Attorney
AUDREY B. HEMESATH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:21-CR-122 WBS |
| Plaintiff, | UNITED STATES'S SENTENCING MEMORANDUM |
| v. | |
| CARLOS VILLASENOR, | |
| Defendant. | |

For two decades, Carlos Villasenor has engaged in the business of dog fighting—breeding dogs, selling dogs, and fighting dogs—a business that only came to an end when law enforcement executed a search warrant on his El Dorado property and seized the 27 dogs at issue in this case. The United States recommends a sentence of 18 months, the top of the sentencing range stipulated to by the parties in the Rule 11(c)(1)(C) plea agreement. An 18 month sentence is consistent with the guidelines range calculated in the PSR (15-21 months) and serves the purposes of deterrence, providing just punishment, and recognizes the seriousness of the offense.

I.  **THE COURT SHOULD ACCEPT THE PLEA AGREEMENT UNDER RULE 11(C)(1)(C)**

The parties in this case have entered into a plea agreement pursuant to Rule 11(c)(1)(C), stipulating to a sentencing range of 12-18 months should the Court accept the agreement. The parties entered this agreement with the understanding that Villasenor was a criminal history category I. ECF No. 37, pg. 7, para. VI.C (criminal history anticipated at level I).

1

The PSR has identified prior convictions of Villasenor that was not known to the parties. ECF No. 44, pg. 7, para. 37 & 38 (identifying two DUI convictions which score at 1 point each). These convictions result in an actual criminal history score of II, resulting in a range of 15-21 months rather than the 12-18 months calculated by the parties.

Nevertheless, the Court should accept the plea agreement, as the guidelines range stipulated to by the parties overlap to a reasonable extent with the PSR guideline range, and adequately capture the seriousness of the criminal conduct. A sentence within the guideline range of 12-18 months will serve the punitive factors identified in 18 U.S.C. § 3553, without resuling in a sentence greater than necessary to comply with the statutory sentencing purposes.

## II. DOG FIGHTING IS AN ILLEGAL ANIMAL FIGHTING VENTURE

Dog fighting is an extreme form of cruelty to animals, illegal under federal law and in all 50 states. It is an organized, money-making business that seeks to entertain at the expense of the animals involved. Not only do the animals forced to participate in dog fighting suffer grave injuries and frequently die during the fights, but they are also mistreated before and after the fights.

The Animal Welfare Act makes it unlawful to "knowingly sell, buy, possess, train, transport, deliver or receive any animal for purposes of having the animal participate in an animal fighting venture." 7 U.S.C. § 2156(b). An "animal fighting venture" is defined as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least two animals for purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(g)(1).

Villasenor pleaded guilty to all 27 counts of the indictment. 7 U.S.C. § 2156(b). Each violation is punishable up to a statutory maximum five years in prison. 18 U.S.C. § 49. This five-year statutory maximum is an indication of the seriousness of the offense of participating in an animal fighting venture.

## III. COMPARISON TO OTHER ANIMAL FIGHTING CASES IN THE EASTERN DISTRICT

Cases involving animal fighting ventures are infrequently prosecuted, both in the Eastern District of California and elsewhere. The government is only aware of two other prosecutions in the last 15 years, both in the Fresno division, and both involving cockfighting. In *United States v. Sanford*, 1:19-cr-

270 (2022), Judge Drozd sentenced the defendant to a 16-month term of imprisonment for a conviction of conspiracy to violate the Animal Welfare Act by cockfighting—a sentence at the min-point of the 12-18 month guidelines range. In *United States v. Crow*, 1:17-cr-242 (2018), Judge O'Neill varied upward and imposed a 24-month term of imprisonment, after finding the same guidelines range of 12-18 months.

An 18-month sentence would be in keeping with both of these previous animal fighting venture cases.

### IV. VILLASENOR'S CONDUCT

This case arose out of an investigation by El Dorado County Animal Services, prompted by complaints from Villasenor's neighbors. Between 2016 and 2021, at least three neighbors repeatedly complained of hearing the barking and crying of distressed dogs coming from Villasenor's property. At least one complaint reported hearing the sound of dogs fighting while humans egged them on.

Federal law enforcement opened a criminal investigation on the basis of these complaints, and made covert contact with Villasenor. Villasenor revealed that he possessed and bred dogs from a number of well-known and desirable dogfighting bloodlines. He sent links to online pedigrees for dogs he possessed, some of whom he was breeding to produce puppies to be raised as fighting dogs. The pedigrees included references to dogs' performances in fighting matches. For example, one dog's pedigree included the notations ".34, .50 BIS MEXICALI." This means that the dog won two matches, the first lasting 34 minutes and the second lasting 50. She also won "Best in Show," a title given to the audience favorite, at a fight in Mexicali. Many of the pedigrees also include the notation "Ch," which refers to a "Champion" dog. A "Champion" is a dog that has won three fights. Villasenor said that he was planning a trip to Baja, Mexico for a dog fight. After the trip, he wrote "We won in 11 min." He then sent a pedigree for a dog that described the dog as "GOOD ALL AROUND LIL POWER HOUSE, #1 .11 min."

Villasenor arranged to sell a juvenile dog for $1,500. Law enforcement went undercover to Villasenor's property to complete the sale and pick up the dog. The dog was taken to a veterinarian, where the dog was found to have elevated levels of creatine kinase, which can indicate muscle damage and can be observed in dogs that have fought or trained to fight. The veterinarian also found possible

3

"peppering" on top of the dog's head, which could indicate another animal biting on its head.

Law enforcement approached Villasenor about purchasing two additional puppies. Villasenor sent the pedigree, stating that the dog was "some of the best Eli Lil Gator to be had; don't let this stuff out in the bay, they my rivals." He further stated, "They going to try to breed to it; I don't sell nothing on the west, usually." The "Eli Gator" bloodline is a known and highly successful dogfighting bloodline.

In 2021, federal law enforcement obtained and executed a search warrant at Villasenor's residence in Placerville. Officers seized 27 live pit bull-type dogs. Approximately half of the dogs were housed on heavy chains attached to huts or trees spread throughout the property. The dogs were spaced so they could see each one another, but not reach one another—a layout designed to frustrate the dogs and foster aggression. In a crate in the garage was a chihuahua mix, which may have been used as a "bait" dog to train the pit bulls to attack without risking injury to the pit bull. One dog who had recently birthed a litter of puppies was housed behind the residence in an outbuilding, along with nine puppies. At least one of the dogs had scars on its face consistent with injuries inflicted by another dog.

Numerous implements of dogfighting were discoved an seized from the property, including: (1) a stand often referred to in illicit dog breeding as a "rape rack," designed to hold a female dog and immobilize her while a male dog mounts her, typically used when a female dog is otherwise too dog-aggressive to mate; (2) three dog treadmills, used to exercise and train dogs prior to a fight to build strength and endurance and/or to maintain fighting weight; (3) plaques for "Best in Show" awards from "Convencion Mexicali" in 2020 and 2021; (4) veterinary medications including antibiotics, a skin stapler, and IV bags; (5) testosterone-boosting supplements used to develop jaw strength and pulling strength; (6) break sticks used to pry open a dog's mouth in order to release a hold that a dog has on another dog; and (7) a hanging scale used to weigh dogs before a dog fight.

The cumulative total of the evidence against Villasenor establishes that he was not a casual participant in dog fighting. He not only participated in dog fighting events, but raised dogs for sale and sold the dogs within and outside California. He traveled to Mexico to further the illegal sport. He has an extensive history in the business of breeding, selling, and fighting dogs, dating back to at least 2009—a date established in one of the pedigrees seized from Villasenor's residence. Thus, for over

twenty years, Villasenor has furthered the culture of promoting dogfighting as a form of grotesque entertainment, as well as profiting financially. Villasenor used his reputation to build a clientele outside of the West Coast, for the purpose of keeping his dogs outside the hands of his competition in the Bay Area.

An 18 month prison sentence is appropriate to reflect the suffering of the dogs that Villasenor kept on his property, fought, and sold to others engaged in illegal dog fighting. Such a sentence would also act as a deterrent to others who would engage in similar conduct.

### V. GOVERNMENT'S SENTENCING RECOMMENDATION

Considering all of the § 3553 factors and the relevant guideline provisions, the Court should sentence Villasenor to an 18-month term of imprisonment. An 18-month term is a sufficiently legthy term of custody to provide deterrence and just punishment in light of the seriousness of the offense.

The parties did not reach an agreement on the imposition of a fine. Villasenor reserved the right to argue he cannot pay a fine, ECF 37 pg. 3, however, the financial information in the PSR establishes that Villasenor has more than sufficient assets to pay the $5,500 fine recommended in the PSR. The government joins in the recommendation of the PSR of a $5,500 fine.

Villasenor additionally agreed to pay a $2,700 special assessment ($100 per count of conviction). ECF 37 pg. 3.

Forfeiture is not an issue, since Villasenor voluntarily surrendered all of his dogs and dog breeding/fighting equipment at the time of the execution of the search warrant. ECF 37 pg. 2-3. Per the terms of the plea agreement, Villasenor has waived any claim to these dogs and property.

The parties did not reach an agreement on the term of supervised release, but did agree that any term imposed should include the condition that Villasenor not own or possess any dogs. ECF 37 pg. 3.

Dated: April 2, 2023
PHILLIP A. TALBERT
United States Attorney

By: /s/ *Audrey B. Hemesath*
Audrey B. Hemesath
Assistant United States Attorney

5